FILED

2016 Feb-29  PM 02:24
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **Jordan Schwyhart,** *on behalf of himself and others similarly situated,* | ) ) ) | |
| **Plaintiff,** | ) ) | **Civil Case No.: 2:15-CV-01175-WMA** |
| **vs.** | ) ) | **NO ORAL ARGUMENT** |
| **Amsher Collection Services, Inc.,** | ) ) | **REQUESTED** |
| **Defendant.** | ) | **OPPOSED** |

## <u>AMSHER COLLECTION SERVICES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY ACTION</u>

# TABLE OF CONTENTS

I.  INTRODUCTION. ............................................................................. 1

II.  STATEMENT OF THE FACTS. ..................................................... 2

    A.  Calls to the Plaintiff's Cell Phone Number. ....................................2

    B.  The July 2015 FCC Declaratory Ruling and the Pending DC
        Circuit Appeal. .............................................................................3

III.  ARGUMENT. ................................................................................. 6

    A.  A Stay Poses No Risk of Damage or Harm to Plaintiff. ..................7

    B.  AmSher Will Suffer Hardship and Inequity if this Action
        Proceeds Before the DC Circuit Rules. .............................................7

    C.  A Stay Will Promote The Orderly Course of Justice By
        Simplifying the Case and Avoid Potential Jurisdictional Issues
        Under The Hobbs Act. ........................................................................9

    D.  A Stay of This Action Would Not Be Indefinite. ...........................10

IV.  CONCLUSION. ............................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Abplanalap v. United Collection Bureau, Inc.*,
No. 15-203, 216 WL 81498 (W.D. NC. Jan. 7, 2016)..............................................15

*Clinton v. Jones*,
520 U.S. 681, 706 (1997).......................................................................................10

*Gensel v. Performant Technologies, Inc.*,
2015 WL 6158072, at *2 (E.D. Wis. Oct. 20, 2015)..............................................15

*John Fontes v. Time Warner Cable, Inc.*,
2:14-cv-02060-CAS-CW (CD California Dec. 2015)..............................................15

*Landis v. N. Am. Co.*,
299 U.S. 248, 254 (1936).......................................................................................10

*Lindsey v. Normet*,
405 U.S. 56, 66 (1972)...........................................................................................13

*Moss v. Gulf Coast Collection Viro, Inc.*,
768 F. 3d 1110, 1120-1121 (11th Cir. 2014) ........................................................14

*Murphy v. DCI Biologicals Orlando, LLC*,
2013 Westlaw 6865772 (Dec. 31, 2013) ........................................................ 10, 15

*Nelson v. Adams United States*,
529 U.S. 460, 466 (2000).......................................................................................13

*Pac. Bell. v. Pac West Telecomm., Inc.* ................................................................14

*Pickens v. AM. Credit Acceptance, LLC*,
2014 WL 4662512 (S.D. AL. Sept. 19, 2014).......................................................15

**Rules**

Fed. R. Civ. P., Rule 23 ......................................................................................4, 5

28 U.S.C. § 2342(1) ...........................................................................................9, 14

2412414_1

47 U.S.C. § 227(b)(l) ...............................................................................7

47 U.S.C. § 402(a) ..................................................................................9

74 U.S.C. §402(a) ...................................................................................5

**Regulatory Material**

In re Rules and Regulations Implementing the Telephone Consumer Protection Act
of 1991, GC Dkt. No. 02-278, WC Dkt. No. 07-135 (July 10, 2015) ......................7

2412414_1

## I.    INTRODUCTION.

Plaintiff Jordan Schwyhart ("Schwyhart") alleges Defendant AmSher Collection Services, Inc. ("AmSher") placed collection calls to a T-Mobile subscriber, Jackie Elgin, to discuss past due amounts on Ms. Elgin's T-Mobile account.   T-Mobile account subscribers consent to receive those calls.   When placing these calls; however, AmSher, without its knowledge, called the cell phone number of Plaintiff.   The cell phone number called by AmSher had been reassigned to Schwyhart.   Schwyhart sued AmSher for allegedly violating the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 et seq. ("TCPA") by calling his cell phone without his prior consent.   Plaintiff seeks to certify a class under Fed. R. Civ. P., Rule 23.

The United States Court of Appeals for the District of Columbia ("DC Circuit") is actively reviewing an Omnibus Declaratory Ruling and Order in the matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Rcd. 7961 (2015) ("FCC Order") issued by the Federal Communications Commission ("FCC") on July 10, 2015 to determine, among other things, three issues central to this action: (1) whether the statutory term "called party" under the TCPA includes the "intended recipient of a telephone call"; and (2) whether a safe harbor exemption for unintentionally calling the wrong person is limited only to the first such call.   Resolution of these two issues

by the DC Circuit could bear directly on whether the TCPA imposes liability on AmSher under the facts alleged in this case.

The D.C. Circuit has exclusive jurisdiction pursuant to the Administrative Procedures Act, 74 U.S.C. §402(a) ("Hobbs Act") to vacate the FCC's Declaratory Ruling. The DC Circuit has set a briefing schedule that requires the parties to complete briefing by February 24, 2016. A decision is expected by early Fall 2016. This Court's Order dated October 30, 2015 requires the parties to complete discovery by June 22, 2016, including expert discovery, and file any motions for class certification by August 19, 2016. Thus, the parties and this Court will not have the benefit of the DC Circuit's opinion before expending significant resources on discovery and class certification motions. For these reasons, and as explained more fully below, AmSher respectfully requests the Court stay this action.

## II.      STATEMENT OF THE FACTS.

### A.      Calls to the Plaintiff's Cell Phone Number.

T-Mobile is a client of AmSher. (See Affidavit of Seth Deforest ("Deforest Aff."), ¶5, Ex. A). When T-Mobile enters into a subscriber agreement with its customers, the customer must sign a contract which allows T-Mobile to contact any telephone number they possess related to the contract and their T-Mobile account. (Deforest Aff., ¶5; T-Mobile's Subscriber Agreement attached as Ex. A to Deforest Aff.). When a T-Mobile account is closed by T-Mobile for non-payment,

2

T-Mobile releases the cell phone number to other carriers.  (Deforest Aff., ¶¶7-8).

When T-Mobile turned over the information concerning Jackie Elgin to AmSher, AmSher had no idea the cell phone number had been reassigned. AmSher caused the Plaintiff's cell phone to ring three times; once on May 8, 2015, again on May 11, 2015 and finally on May 18, 2015.  No other calls were made to the Plaintiff's cell phone.  (Deforest Aff., ¶9).  AmSher never called the Plaintiff's cell phone after May 18, 2015.

AmSher called the cell phone number provided by T-Mobile to AmSher to collect the debt owed by Jackie Elgin.  AmSher had no knowledge and no reasonable way to know at the time it called the cell phone number provided by T-Mobile that the number had been reassigned to the Plaintiff.  AmSher had no knowledge it had called the Plaintiff's cell phone until the Complaint was filed on July 20, 2015.

**B.    The July 2015 FCC Declaratory Ruling and the Pending DC Circuit Appeal.**

The TCPA prohibits a caller from using an autodialer to place non-emergency phone calls to a cellular telephone number without the "called party's" prior express consent. 47 U.S.C. § 227(b)(l). On July 10, 2015, the FCC released the FCC Order, which addressed two issues which are highly relevant here.

First, the FCC considered whether the statutory term "called party" includes an original subscriber to a cell phone number who provided his/her telephone

2412414_1

number to a caller, consented to receive calls, and was the intended recipient of subsequent calls, even if the cell phone number had been subsequently reassigned to a new subscriber without the caller's knowledge. FCC Order at ¶¶ 71-84). The exact situation we have here.

Second, the FCC considered, irrespective of who is included in the definition of "called party," whether a safe harbor exists for callers who call a cell phone number when the caller had obtained consent to call from the previous subscriber and did not know the cell phone number had been reassigned. *Id.* at ¶¶ 85-92. Also, the exact issue we have here.

The FCC concluded the statutory term "called party" means the "subscriber and customary user" of a cellular telephone number -- not the "intended recipient" of a call. *Id.* at ¶¶ 74, 78. The FCC concluded that there exists a limited safe harbor *(i.e.,* no TCPA liability) for the first call that a caller places to a reassigned cell phone number when the caller does not know or suspect the number has been reassigned. *Id.* at ¶¶ 88-92. Two of the five FCC Commissioners dissented from these interpretations. *Id.* at pp. 112-138.

Since the FCC released Order, nine companies have filed petitions in the DC Circuit seeking review of the FCC's Order.[1] These petitions have been

---

[1] *ACA Int'l v. FCC,* No. 15-1211 (D.C. Cir., filed July 10, 2015); *Sirius XM Radio, Inc. v. FCC,* No. 15-1218 (D.C. Cir., filed July 14, 2015); *Prof'l Ass'n for Customer Engagement, Inc. v. FCC,* No. 15-1244 (D.C. Cir., consolidated July 29, 2015); *CodeBroker, LLC v. FCC,* No. 15-1278 (D.C. Cir., filed Aug.14, 2015); *salesforce.com inc. v. FCC,* No. 15-1290 (D.C. Cir., filed

4

consolidated. There are also nine intervenors.[2]  The petitioners seek relief from the FCC's Declaratory Ruling pursuant to the Hobbs Act. ACA Am. Pet. for Review at 2. That statute sets forth the procedural process one must follow to "enjoin, set aside, annul, or suspend any order of the [FCC]" under the Communications Act of 1934, 47 U.S.C. §402(a), and provides that challenges to FCC orders must be made directly to a court of appeals. 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a).

Many appellate courts have held that the Hobbs Act prevents any Court, other than the Court of Appeals, from directly reviewing an FCC order or from collaterally reviewing an issue decided in such an FCC order, even when the issue arises in a suit between private parties.  The Eleventh Circuit has noted this rule, -- *See Murphy v. DCI Biologicals Orlando, LLC,* 2013 Westlaw 6865772 (Dec. 31, 2013) -- holding the Hobbs Act expressly reserves to the Federal Court of Judicial Appeal opinion to "set aside, a null, or suspend" the FCC's rulings.

They all request that the DC Circuit vacate the FCC's Order on the issues of potential liability for calls to reassigned cell phone numbers. *See, e.g., ACA Int'l, etal. v. Fed. Commncn's Comm.,* No. 15-1211, Am. Pet. for Review by ACA Int'l,

---

Aug. 26, 2015); *Chamber of Commerce of the U.S. v. FCC,* No. 15-1306 (D.C. Cir., filed Sept. 3, 2015); *Consumer Bankers Association v. FCC,* No. 15-1304 (D.C. Cir., filed Sept. 1, 2015); *Rite Aid Hdqtrs.  Corp. v. FCC,* No.  15-1313 (D.C. Cir., filed Sept. 4, 2015); *Vibes Media, LLC v FCC,* Case No. 15-1311 (D.C. Cir., filed Sept. 4, 2015); *Portfolio Recovery Associates v. FCC* Case No.15-1314 (D.C. Cir., filed Sept. 8, 2015).

[2]Intervenors are MRS BPO, LLC, Cavalry Portfolio Services, LLC, Diversified Consultants, Inc., Mercantile Adjustment Bureau, LLC, Council of American Survey Research Organizations, Marketing Research Association, National Association of Federal Credit Unions, Gerzhom, Inc. and Conifer Revenue Cycle Solutions, LLC.

5

Doc. 1562251 at 4-5 (DC Cir. , July 13, 2015). For example, ACA International's Petition asks the DC Circuit to:

> hold unlawful and set aside the [FCC]' s treatment of prior express consent, including the Commission's treatment of reassigned numbers, and compel the Commission to either -(A) establish a viable safe harbor for autodialed 'wrong number' non-telemarketing calls to reassigned wireless numbers, or (B) define 'called party' as a calls' intended recipient.

*Id.* at 4-5.

On October 13, 2015, the DC Circuit issued an order setting a briefing schedule that requires all briefs to be filed by February 24, 2016. (Order, No. 15-1211 at 1-2 (DC Cir. Oct. 13, 2015)). The parties will be notified of a hearing date once all briefs are submitted. *Id.*

## III.   ARGUMENT.

A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket," *i.e.,* to grant a *"Landis* stay." *Clinton v. Jones,* 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936)). In determining whether to grant a *Landis* stay, a Court must weigh the competing interests of the various parties which may be affected by the decision to grant or refuse to grant the stay. In determining whether a stay should be granted, the Court must consider (1) the possible damage or harm to the non-moving party which may result from granting the stay; (2) the hardship or inequity the moving party may suffer in being required to go forward with the case if the request for a stay is

6

denied; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* Each of these factors weighs strongly in favor of granting a *Landis* stay.

### A.    A Stay Poses No Risk of Damage or Harm to Plaintiff.

Here, the conduct complained of in the Complaint against AmSher ceased on May 19, 2015 and has not been repeated. Plaintiff only seeks to recover statutory penalties, as well as a moot injunction. Complaint (Doc. 5), ¶ 75(e).

Delaying resolving Plaintiff's claims for statutory damages cannot, without more, constitute harm or damage to the Plaintiff.

Indeed, Plaintiffs seek primarily statutory penalties under the TCPA in the amount of $500 to $1,500 per call received from AmSher, Doc. 5, ¶¶ 75 (f)&(g). Plaintiff does not and cannot allege those amounts are out-of-pocket expenses requiring immediate reimbursement.   Further, Plaintiff's request for an injunction does not constitute damage or harm to Plaintiff because AmSher has stopped calling the Plaintiff's cell phone. There is no ongoing harm to Plaintiff and no out of pocket damages which Plaintiff has incurred that requires immediate reimbursement to make Plaintiff whole.

### B.    AmSher Will Suffer Hardship and Inequity if this Action Proceeds Before the DC Circuit Rules.

This factor can be established by showing that a failure to stay the case will

force AmSher to participate in a potentially unnecessary proceeding, and, thereby, incur unnecessary expenses. Landis, 299 U.S. at 255. This factor can also be established by showing that a failure to stay the case could deprive AmSher of the opportunity to wait for a ruling in another case on a potentially controlling point of law. Id. at 256.

This case involves precisely the types of hardship and inequity that warrant a stay. The DC Circuit is currently considering whether the FCC's Declaratory Ruling properly concluded that the statutory definition of "called party" does not include the intended recipient of the call, and whether a safe harbor exists for callers (like AmSher) who unknowingly dial reassigned cell phone numbers. ACA Am. Pet. for Review at 4-5.

If the DC Circuit holds that the statutory term "called party" means the intended recipient of the call or that the safe harbor provision extends beyond the first call, AmSher will have a complete defense to Plaintiff's claims. Plaintiff should then dismiss their claims voluntarily, or the parties and the Court will proceed with a clearer understanding of the law on these two primary issues in this case.

Moreover, under some Courts' interpretation of the Hobbs Act, this Court may lack jurisdiction to address those issues in the first instance, preventing a meaningful adjudication of AmSher's defenses. AmSher could be forced to forego

2412414_1

part of its "right to respond on the merits of the case," in violation of the "fundamental requisite of due process of law." *Nelson v. Adams United States,* 529 U.S. 460, 466 (2000) (internal quotation marks omitted); *see also Lindsey v. Normet,* 405 U.S. 56, 66 (1972) ("Due process requires that there be an opportunity to present every available defense").

It is unlikely that the DC Circuit will issue an opinion before the class certification and summary judgment deadlines lapse in this case. Thus, if the Court does not grant a stay and the DC Circuit vacates the FCC's interpretation of the definition of "called party" or the scope of the safe harbor exemption, the DC Circuit's ruling would render moot substantial efforts by the parties and this Court. The risk of wasting judicial resources is particularly high because the DC Circuit has exclusive authority under the Hobbs Act to "enjoin, set aside, suspend (in whole or in part), or to determine the validity" of the FCC's interpretations of "called party" and the scope of the safe harbor.  28 U.S.C. § 2342(1); 47 U.S.C. §402(a); *see generally Pac. Bell. v. Pac West Telecomm., Inc.,* 325 F.3d 1114, 1121 (9th Cir. 2003). This second factor also favors a stay.

### C.   A Stay Will Promote The Orderly Course of Justice By Simplifying the Case and Avoid Potential Jurisdictional Issues Under The Hobbs Act.

The DC Circuit is reviewing the FCC's Order and, specifically, the two primary issues at issue in this case. ACA Am. Pet. for Review at 4-5. Failing to

2412414_1

wait for a ruling from the DC Circuit could further complicate the issues that will need to be resolved by this Court if the DC Circuit ultimately vacates the Declaratory Ruling. In contrast, allowing the DC Circuit to conclude the appeal would promote judicial efficiency. *See Moss v. Gulf Coast Collection Viro, Inc.*, 768 F. 3d 1110, 1120-1121 (11th Cir. 2014)(noting Hobbs Act's grant of exclusive jurisdiction to courts of appeals to hear direct challenges to FCC orders promotes judicial efficiency).

Staying this case pending resolution of the DC Circuit appeal will ensure a uniform, national interpretation of these important TCPA issues. Indeed, numerous Courts around the country have granted similar motions to stay in TCPA cases pending the completion of the DC Circuit appeal. *See, e.g.,Gensel v. Performant Technologies, Inc.,* 2015 WL 6158072, at *2 (E.D. Wis. Oct. 20, 2015); *John Fontes v. Time Warner Cable, Inc.*, at 2:14-cv-02060-CAS-CW (C.D. California Dec. 2015); *Abplanalap v. United Collection Bureau, Inc.*, No. 15-203, 216 WL 81498 (W.D. NC. Jan. 7, 2016); *Pickens v. AM. Credit Acceptance, LLC,* 2014 WL 4662512 (S.D. AL. Sept. 19, 2014)(staying TCPA case in reference to FCC pending rulings interpreting the statutory terms "called party"). The third *Landis* factor favors a stay.

### D.    A Stay of This Action Would Not Be Indefinite.

Although it is not a *Landis* factor, Courts assessing requests for a *Landis*

10

stay consider the expected duration of the stay. *See Murphy v. DCI Biologicals Orlando, LLC,* 2013 Westlaw 6865772 (Dec. 31, 2013).  Here, a stay would be required only for a relatively short period of time. Briefing of the DC Circuit appeal will be completed by February 24, 2016. It can reasonably be expected that the DC Circuit will issue an opinion by the Fall of 2016, which is an acceptable period of time for a *Landis* stay. *See, e.g., Ramirez v. TransUnion, LLC,* 2015 WL 6159942, at *2 (no prejudice in delaying ruling on request for injunctive relief where challenged conduct already stopped). The stay that AmSher requests here would not be "indefinite," and a stay is appropriate.

## IV.   CONCLUSION.

AmSher respectfully requests the Court grant its Motion to Stay this action pending a final order from the DC Circuit.

Dated: February 29, 2016.

<div style="margin-left:40%">
Respectfully submitted,
By:    /s/ E. Britton Monroe

E. Britton Monroe (ASB-1454-072E)
Laura C. Nettles (ASB-5805-S63L)
Attorneys for Amsher Collection Services, Inc.
</div>

**OF COUNSEL:**
LLOYD, GRAY, WHITEHEAD & MONROE, P.C.
2501 Twentieth Place South, Suite 300
Birmingham, Alabama 35223
Telephone (205) 967-8822
Facsimile (205) 967-2380
bmonroe@lgwmlaw.com
lnettles@lgwmlaw.com

2412414_1

## <u>CERTIFICATE OF SERVICE</u>

I certify a true and correct copy of the foregoing was served upon the following counsel and pro se parties by e-filing and/or by United States Mail, with postage prepaid and properly addressed, on this <u>29th</u> day of February, 2016:

Gina DeRosier Greenwald
Greenwald Davidson Radbil PLLC
5550 Glades Rd, Ste. 500
Boca Raton, FL 33431
Tel: (561) 826-5477
Fax: (561) 961-5684
ggreenwald@gdrlawfirm.com

Aaron D. Radbil
Greenwald  Davidson  Radbil  PLLC
*(pro hac vice)*
106 East Sixth Street, Suite 913
Austin, Texas 78701
Tel: (512) 322-3912
Fax: (561) 961-5684
aradbil@gdrlawfirm.com

/s/ E. Britton Monroe
OF COUNSEL

12

2412414_1