IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

**Jordan Schwyhart,** *on behalf of himself and others similarly situated,*  )
)
)
**Plaintiff,**  )
)
)   Civil Case No.: 2:15-CV-01175-WMA
vs.  )
)
**Amsher Collection Services, Inc.,**  )
)
**Defendant.**  )

### AMSHER COLLECTION SERVICES, INC.'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO STAY ACTION

Defendant AmSher Collection Services, Inc. ("AmSher") respectfully submits this Reply in Support of its Motion to Stay:

**I.    OSORIO IS DISTINGUISHABLE.**

The Plaintiff relies heavily on the one (1) time the Eleventh Circuit has spoken to the issue of a "called party" under the Telephone Consumer Protection Act ("TCPA"). A careful reading of the case reveals the facts and the holdings are not dispositive of AmSher's Motion to Stay Action.

In *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014), Plaintiff's roommate, Clara Betancourt ("Ms. Betancourt"), had on more than one occasion provided State Farm Bank with a cell phone which was not the number to her cell phone, but rather was Plaintiff's cell phone number. *Id.* at 1247-1248.

2447514_1                                          1

When Ms. Betancourt became delinquent on her account, State Farm Bank attempted to call her using all three (3) cell phone numbers Ms. Betancourt had provided to them, including Plaintiff's cell phone number. Plaintiff claimed he told State Farm Bank to stop calling his cell phone number. Plaintiff alleged violations of the TCPA because he claimed State Farm Bank continued to call his cell phone after he orally revoked the consent given by Ms. Betancourt.

The issue in the *Osorio* appeal was whether Plaintiff could revoke consent to call a number that Ms. Betancourt had provided State Farm Bank. The District Court granted summary judgment in favor of State Farm Bank on Osorio's claims under the TCPA, finding neither Osorio nor Ms. Betancourt effectively revoked the consent. *Id*. at 1248.

On appeal, the Eleventh Circuit looked at whether the Plaintiff (Osorio) could revoke the prior consent given by Ms. Betancourt to be called on his cell phone number. In its review of the TCPA, the Court reviewed its decision in *Meadows v. Franklin Collection Services, Inc.*, 414 F. Appx. 230 (11th Cir. 2011), which was relied upon by State Farm Bank for the proposition that State Farm Bank had consent to call the cell phone of the intended recipient of the calls, Ms. Betancourt therefore, there was no violation of the TCPA. The Court said the *Meadows* decision was not applicable to the TCPA claims in the *Osorio* case

because the caller had a prior business relationship with the intended recipient of the calls.

The Court then of its own accord went into a discussion of the *Soppet v. Enhanced Recovery Co., LLC*, 679 F. 3d 637, 640 (7th Cir. 2012) decision in which Judge Easterbrook stated the use of the term "called party" seven (7) times in the statute over a short span "implies that the consent must come from the current subscriber." *Soppet*, 679 F. 3d at 639-40. The *Soppet* Court held that a current subscriber could revoke the consent previously given by a former holder of a reassigned cell phone number. State Farm Bank conceded that Osorio could revoke consent for his cell phone, but insisted the revocation had to be in writing, a requirement which the Eleventh Circuit rejected. *Osorio*, 746 F. 3d 1251.

Regardless of the discussion of "called party" in *Osorio*, the TCPA allegations were remanded to the trial court on the disputed issue of whether Ms. Betancourt had the authority to consent to Plaintiff receiving the calls, and whether she in fact did so. Id. at 1252. The Court found there was an issue of fact as to whether Ms. Betancourt was Osorio's agent for purposes of consent under the TCPA. Therefore, the actual holding in *Osorio* is not that "called party" for purposes of consent under the TCPA means current subscriber. No other Circuit Court of Appeals have relied on the "called party" discussion in either *Osorio* or *Soppet*

## II. THE DECISION OF THE D.C. CIRCUIT COURT AND ITS EFFECT ON THE FCC ORDER TRUMPS THE DECISION OF OSORIO.

The Plaintiff minimizes the importance of the FCC Order as he argues because "called party" under the TCPA was defined by the Eleventh Circuit's decision in *Osorio,* the outcome of the petitions before the D.C. Circuit concerning the FCC Order does not apply to the case at bar. The Eleventh Circuit's opinion in *Osorio*, defining "called party" under the TCPA, was issued before the FCC Order. The Hobbs Act provides that an FCC order may not be challenged in civil litigation and limits review of FCC orders to direct appeals to D.C. Circuit. 28 U.S.C. §2342. Thus, once the FCC Order was issued, the *Osorio* holding was abrogated by the FCC's Order. Consequentially, the *Osorio* decision no longer dictates the interpretation of the called party as the current subscriber under the TCPA. Instead, the remaining question is whether the D.C. Circuit will set aside or modify the FCC Order. Accordingly, until the D.C. Circuit resolves the called party issue in the FCC Order, this Court should stay the pending case.

As set out in AmSher's original Motion to Stay, consent is central to the TCPA. The entire statutory scheme is designed to encourage callers to receive the consent of the parties they intend to contact and deter callers from making calls to those parties without first obtaining consent. The FCC's current interpretation of "called party" to mean the current subscriber rather than the intended recipient of the call conflicts with that goal as it punishes AmSher or its client who had

obtained the consent that the TCPA requires. This does nothing to serve Congress's objective as acting within the TCPA.

### III. BECAUSE THE D.C. CIRCUIT'S DECISION CAN BE EXPECTED TO DRAMATICALLY IMPACT THIS CASE, A STAY IS WARRANTED.

The United States District Court for the Middle District of Florida stated in Telephone Science Corp. v. Hilton Grand Vacation Co., LLC No. 16:15-CV-969, 2015 WESTLAW 74444(M.D. FL Nov. 20, 2015) "[w]here 'a federal appellant decision … is likely to have a substantial or controlling effect on the claims or issues' a stay may be warranted." *Id*. at 2 citing, *Miccosukee Tribe of Indians v. S. Fla. Mgmt. Dist.*, 559 F. 3d 1191, 1198 (11th Cir. 2009). The *Osorio* definition of called party is arbitrary and capricious, particularly with respect to reassigned numbers. Under the *Osorio's* "called party" interpretation, as well as that of the current FCC Order, a company such as AmSher could be sued for calls placed regardless of its due diligence or good faith reliance of information provided by the intended recipient. This illogical interpretation is now being abused to attack companies for their reliance on consent given by the intended recipient of the call, regardless of whether or not the company had any notice of the reassignment of the recipient's cell phone number. Such an interpretation could lead plaintiffs to exploit the reassignment of telephone numbers by deliberating failing to notify the caller they are not the intended recipient and accumulating damages by waiting to

receive additional calls.  This interpretation is in clear conflict of Congress's intent to ensure confidential communications. Statutory provisions must always be interpreted in the context of the entire statutory scheme.  (*Utility Air Regulatory Group v. EPA*, 134 S. Ct. 2427, 2442 (2014). An agency's interpretation must account for … "the broader context of the statute as a whole." *Id*.  (Internally citations omitted). Therefore, there is ample reason to believe the "called party" aspect of the FCC Order will be found arbitrary and capricious.

**IV.    *OSORIO* IS SHORTSIGHTED.**

The *Osorio's* interpretation of called party bears no relationship to the reality of how businesses contact their customers.  Businesses obtain consent for a variety of purposes.  Research entities contact wireless subscribers who agree to participate in surveys, opinion research, polling or customer satisfaction surveys. Companies and their agents contact customers when they fail to pay their bills on time or fallen behind on loans.  A host of businesses provide appointment notification, important information and fraud alerts customers have consented to receive. Financial institutions contact their account holders to gather information regarding fraud, identity theft and other data security issues and to provide vital account information and messages.  Customers in turn provide their consent to be contacted on their wireless phones because they benefit from and they desire these messages.  Calls to wireless numbers provide an instantaneous method of

communication that may be key to avoiding customer harm and for many customers receiving an alert or call on their cell phone is the preferred method of communication as landlines have become less prevalent.

When businesses such as AmSher attempt to contact customers at phone numbers their customers have provided the businesses clearly *intends to* reach the party who gave its consent.  In reality, however, callers will undoubtly reach reassigned telephone numbers despite their best efforts to reach only the precise individuals who provided their consent to be called.  Thus, the FCC's Order and the *Osorio* Court have interpreted "called party" in a manner that completely ignores the caller's intent, and instead focuses on the current subscriber of the wireless number. Such an interpretation ignores the reality of how and why businesses contact customers and is completely inconsistent with the natural reading of the term "called party".

The FCC Order and the Eleventh Circuit's decision in *Osorio* are unreasonable because they put the responsibility of knowing whether a wireless number has been reassigned on the caller.  There is no reliable mechanism for businesses to track reassigned wireless numbers after they have obtained consent to contact that number.  Customers change cell phone numbers and wireless companies reassign those numbers all the time without notifying businesses to which they previously provided with the phone number.

## V. PLAINTIFF WILL NOT BE PREJUDICED.

Plaintiff received three (3) "message only" calls from AmSher. No other calls have been placed to the Plaintiff's cell phone by AmSher. Plaintiff attempts to argue he will be prejudiced by characterizing the likely duration for the appeal in the D.C. Circuit as "indefinite". This characterization is inaccurate. Briefing on the petitions concluded in February of 2016. (See Order at *ACA Int'l, et al. v. Fed. Commncn's Comm.,* No. 15-1211, Am. Pet. for Review by ACA Int'l, Doc. 1562251 at 4-5 (DC Cir. , July 13, 2015). This indicates a decision could be rendered by Spring or Summer, particularly because only three (3) of the twelve (12) legal issues addressed in the FCC Order were challenged by the Petitioners' Briefs and two (2) of those issues bear directly on this case.

Plaintiff seeks to certify a class, which will be strenuously litigated by AmSher during the next several months. However, if the term "called party" is interpreted by the D.C. Circuit as the petitioners have pled, considerable time, costs and efforts by the parties and this Court will be unnecessary.

## VI. CONCLUSION.

The decision of the D.C. Circuit concerning the interpretation of the term "called party" has a direct impact on this case. The briefing of the petitioners has already been completed. A stay of this case will not be prejudicial to the Plaintiff. However, if Defendant is forced to spend time, money and effort defending against

a class action certification over the course of the next several months only to have the premise upon which the alleged violation of the TCPA claim over turned, the Defendant will be prejudiced. AmSher respectfully requests the Court stay the case pending the outcome of *ACA Int'l, et al. v. Fed. Commncn's Comm.,* No. 15-1211, Am. Pet. for Review by ACA Int'l, Doc. 1562251 at 4-5 (D.C. Cir., July 13, 2015).

Dated: March 21, 2016.

    Respectfully submitted,
    By:   /s/ E. Britton Monroe
    E. Britton Monroe (ASB-1454-072E)
    Laura C. Nettles (ASB-5805-S63L)
    Attorneys for Amsher Collection Services, Inc.

**OF COUNSEL:**
LLOYD, GRAY, WHITEHEAD & MONROE, P.C.
2501 Twentieth Place South, Suite 300
Birmingham, Alabama 35223
Telephone (205) 967-8822
Facsimile (205) 967-2380
bmonroe@lgwmlaw.com
lnettles@lgwmlaw.com

## **CERTIFICATE OF SERVICE**

I certify a true and correct copy of the foregoing was served upon the following counsel and pro se parties by e-filing and/or by United States Mail, with postage prepaid and properly addressed, on this <u>21st</u> day of March, 2016:

Gina DeRosier Greenwald
Greenwald Davidson Radbil PLLC
5550 Glades Rd, Ste. 500
Boca Raton, FL 33431
Tel: (561) 826-5477
Fax: (561) 961-5684
ggreenwald@gdrlawfirm.com

Aaron D. Radbil
Greenwald  Davidson  Radbil  PLLC
*(pro hac vice)*
106 East Sixth Street, Suite 913
Austin, Texas 78701
Tel: (512) 322-3912
Fax: (561) 961-5684
aradbil@gdrlawfirm.com

<u>/s/ E. Britton Monroe</u>
OF COUNSEL